**FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSEPH ARUANNO, | Civil Action No. 14-3413 (WJM) |
| Plaintiff, | |
| v. | |
| SARAH DAVIS, | |
| Defendants. | |
| | |
| JOSEPH ARUANNO, | Civil Action No. 14-5099 (WJM) |
| Plaintiff, | |
| v. | |
| STATE OF NEW JERSEY, | |
| Defendants. | |
| | |
| JOSEPH ARUANNO, | Civil Action No. 14-5100 (WJM) |
| Plaintiff, | |
| v. | **OPINION** |
| SARAH DAVIS, | |
| Defendants. | |

**APPEARANCES**:

    JOSEPH ARUANNO, #363
    Special Treatment Unit
    P.O. Box 905
    Avenel, New Jersey   07001
    Plaintiff *Pro Se*

**MARTINI, District Judge**:

Presently before this Court are two civil complaints which Joseph Aruanno, who is civilly committed to the Special Treatment Unit ("STU") under the New Jersey Sexually Violent Predator Act, seeks to file without prepayment of the filing fee, and Aruanno's apparent request to file a petition for mandamus without prepayment of the filing fee.  For the reasons expressed below, this Court will direct Aruanno to show cause why this Court should not deny his applications to proceed *in forma pauperis* in these cases because he has abused the privilege of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and his submissions do not show that he is in imminent danger of serious physical injury.

## I.   BACKGROUND

Aruanno has filed over 39 civil actions in this Court, while proceeding *in forma pauperis,* and 45 appeals in the United States Court of Appeals for the Third Circuit.   At this time, he seeks permission to proceed *in forma pauperis* and to thereby file two civil rights complaints without payment of the $400 filing and administrative fees.   He also apparently seeks to file a petition for mandamus against the State of New Jersey, but he did not prepay the filing fee or submit an application to proceed *in forma pauperis* in that matter.   Specifically, he seeks to bring *Aruanno v. Davis,* Civil Number 14-3413 (WJM), against Sarah Davis, the Assistant Superintendent of the Special Treatment Unit.   Aruanno complains that "certain staff refuse to close our cell doors as needed[, which] permits other residents/patients to watch us using the toilet [that] is right in the doorway where some masturbate, etc."   (Civ. No. 3413, ECF No. 1 at 6.)   Aruanno asserts that officials allow residents to shield themselves with a four-foot curtain, but he cannot afford to buy a curtain.  He further claims that "when sleeping, coming from the shower, etc., there are many female staff members who[] see us changing, etc., then say we were exposing ourselves to them,

which then keeps us here longer." *Id.* He alleges that "curtains are not necessary if the doors were fixed to slide closed, as we were told when we moved in here, but defendant Sarah Davis just informed me in writing that the doors will not be adjusted and that curtains are a 'PRIVILEGE' that will be taken away, which has happened, which has forced this submission, and others, requesting that this court address our PRIVACY RIGHTS and how they apply to a therapeutic existence here." *Id.* at 7. Aruanno seeks injunctive relief, declaratory relief, and damages of ten million dollars. In *Aruanno v. Yates,* Civil Number 14-5100 (WJM), Aruanno seeks to sue Administrator Yates, Assistant Superintendent Davis, and John/Jane Does 1-20 for Aruanno's "being denied legal access such as a law library," research material, forms, envelopes, typewriters, photocopies, and paralegals. (Civ. No. 14-5100, ECF No. 1 at 6.) He claims that "the injury inflicted as a result is such as the U.S. Supreme Court denying petition No. 12-9040 by way of letter dated 7/3/2013 because I could not obtain PHOTOCOPIES in time."[1] *Id.* He further claims that "the state, JOHN/JANE DOES, et al., fail/refuse to comply with the Americans with Disabilities Act; the Rehabilitation Act; the Law Against Discrimination, etc., where they have held, and upheld, for years that I am an incompetent person lacking intellectual cognitive abilities, need certain medications to be able to gain reality, etc., but then, as an involuntarily civilly committed person, fail/refuse to APPOINT A 'GUARDIAN,' etc., to assist me in properly and fairly accessing the court[s]."[2] *Id.* In addition to these actions, wherein Aruanno submitted

---

[1] On February 20, 2013, Joseph Aruanno filed a petition for a writ of certiorari regarding Third Circuit Number 12-2660, which the Supreme Court denied on April 29, 2013. In 12-2660, the Third Circuit affirmed Judge Chesler's dismissal with prejudice of the various claims Aruanno raised in his complaint after Judge Chesler gave Aruanno leave to amend the complaint twice. *See Aruanno v. Allen,* Civ. No. 09-1250 (SRC), order (D.N.J. Apr. 13, 2012), *aff'd,* 498 F.App'x 160 (3d Cir. 2012), *cert. denied,* 133 S.Ct. 2033 (Apr. 29, 2013) (No. 12-9040).

[2] On at least four occasions, this Court has either *sua sponte* considered the appointment of a

3

applications to proceed *in forma pauperis,* on July 17, 2014, Aruanno submitted a "Petition for Writ of Mandamus" in a matter captioned *Aruanno v. State of New Jersey*, Civil Number 14-5099 (WJM).  Aruanno states that he is submitting the petition for mandamus "in reply to the letter I just received from the Clerk of the U.S. Court of Appeals dated 8/10/14 which was in reply to my request about the outcome of my Petition for Rehearing En Banc"  (Civ. No. 14-5099 (WJM), ECF No. 1 at 2.)  Aruanno did not include an application to proceed *in forma pauperis* with his mandamus petition or prepay the $400 filing and administrative fees.

## II.   PRIVILEGE OF PROCEEDING IN FORMA PAUPERIS

The federal *in forma pauperis* statute, enacted in 1892 and codified as 28 U.S.C. § 1915, "is designed to ensure that indigent litigants have meaningful access to the federal courts."  *Neitzke v. Williams,* 490 U.S. 319, 324 (1989).  Toward this end, § 1915(a) provides that courts of the United States, "may authorize the commencement, prosecution or defense of any suit . . , without prepayment of fees or security therefor, by a person who submits an affidavit" stating, *inter alia,* that he or she is unable to pay the costs of the lawsuit.  28 U.S.C. § 1915(a); *see also Neitzke,* 490 U.S. at 324. "Congress recognized, however, that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits."  *Id.*  To curtail such abuse, the provision of the statute in effect before (and after) passage of the Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), required the court to *sua sponte* dismiss a claim filed *in forma pauperis* if the court determined that the action was frivolous or malicious.  *Id.*

---

guardian *ad litem* for Aruanno or denied his request to appoint a guardian.  *See Powell v. Symons*, 680 F.3d 301, 307 (3d Cir. 2012).  *See, e.g., Aruanno v. New Jersey,* Civ. No. 13-5831 (WJM) order (D.N.J. June 5, 2014) (declining *sua sponte* to appoint a guardian ad litem); *Aruanno v. Velez,* Civil No. 12-0152 (WJM), 2012 WL 1232415 (D.N.J. Apr. 12, 2012) (declining to appoint a guardian, pursuant to Fed. R. Civ. P. 17(c), for Aruanno because there was no verifiable evidence indicating that Aruanno was legally incompetent), *aff'd* 500 F.App'x 126 (3d Cir. 2012).

In 1996, "Congress concluded that the large number of meritless prisoner claims was caused by the fact that prisoners easily obtained I.F.P. status and hence were not subject to the same economic disincentives to filing meritless cases that face other civil litigants." *Abdul-Akbar v. McKelvie,* 239 F.3d 307, 312 (3d Cir. 2001); *see also* 141 Cong. Rec. S7498-01, S7524 (daily ed. May 25, 1995) (statement of Sen. Kyl) ("Filing frivolous civil rights lawsuits has become a recreational activity for long-term residents of prisons."); 141 Cong. Rec. S7498-01, S7524 (daily ed. May 25, 1995) (statement of Sen. Dole) ("[P]risoners will now 'litigate at the drop of a hat,' simply because they have little to lose and everything to gain."). To accomplish this, Congress curtailed the ability of prisoners to take advantage of the privilege of filing *in forma pauperis* by enacting a "three strikes rule," which provides: "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). "In stark terms, [the three strikes rule in § 1915(g)] declared that the I.F.P. privilege will not be available to prisoners who have, on three occasions, abused the system by filing frivolous or malicious lawsuits or appeals, no matter how meritorious subsequent claims may be." *Abdul-Akbar,* 239 F.3d at 314.

This Court notes that the Third Circuit upheld the constitutionality of the three strikes rule against a constitutional challenge in *Abdul-Akbar*, 239 F.3d 307. In doing so, the Third Circuit noted that "§ 1915(g) does not block a prisoner's access to the federal courts. It only denies the prisoner the privilege of filing before he has acquired the necessary filing fee." *Id.* at 314. The court further found that "prisoners may seek relief in state court, where limitations on filing I.F.P. may not be as strict," *id.* at 314-15, and that the imminent danger exception allowed federal courts "to permit an

5

otherwise barred prisoner to file a complaint I.F.P. if the prisoner could be subject to serious physical injury and does not then have the requisite filing fee." *Id.* at 315.  The court found that "[p]reventing frequent filers from obtaining fee waivers is rationally related to the legitimate government interest of deterring frivolous lawsuits because 'Congress is no more compelled to guarantee free access to federal courts than it is to provide unlimited access to them.'" *Id.* at 319 (quoting *Roller v. Gunn,* 107 F.3d 227, 231 (4th Cir. 1997)).  The Third Circuit held that "merely requiring a prisoner to pay filing fees in a civil case does not, standing alone, violate that prisoner's right of meaningful access to the courts[, as §] 1915(g) does not prevent a prisoner with 'three strikes' from filing a civil action; he or she is simply unable to enjoy the benefits of proceeding I.F.P. and must pay the fees at the time of filing[.]" *Id.* at 317.

      The three strikes rule in § 1915(g) does not apply to Aruanno, even though he has had more than three actions dismissed by this Court for failure to state a claim.  This is because the PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pre-trial release, or diversionary program"  28 U.S.C. § 1915(h).  Aruanno is not a "prisoner" under this definition because he is detained pursuant to New Jersey's Sexually Violent Predator Act and, as such, his "detention is not . . . punishment for his criminal conviction but rather a civil commitment for non-punitive purposes."  *Marcum v. Harris,* 328 F.App'x 792, 796 n.4 (3d Cir. 2009) (quoting *Page v. Torrey,* 201 F.3d 1136, 1140 (9th Cir. 2000)).  Accordingly, § 1915(g), which limits the ability of a prisoner with a history of abusive litigation to proceed *in forma pauperis*, does not require this Court to deny Aruanno's present applications to proceed *in forma pauperis*, even though he has brought more than three civil rights actions that were dismissed as frivolous or for failure to state a

claim upon which relief may be granted and none of his present submissions indicates that he is under imminent danger of serious physical injury.

Nevertheless, this Court has the discretionary authority to deny *in forma pauperis* status to persons who have abused the privilege.  *See, e.g., In re McDonald,* 489 U.S. 180 (1989) (denying *in forma pauperis* status to non-prisoner seeking to file a petition for a writ of habeas corpus in the Supreme Court, where the person had pursued 73 prior filings); *Zatko v. California,* 502 U.S. 16 (1991) (denying applications to proceed *in forma pauperis* to file a habeas corpus petition to one petitioner who filed 73 petitions and to another petitioner who filed 45 petitions); *Martin v. District of Columbia Court of Appeals,* 506 U.S. 1 (1992) (denying *in forma pauperis* application of "a notorious abuser of this Court's certiorari process," who had filed 11 petitions which were frivolous, with the arguable exception of one); *Butler v. Department of Justice,* 492 F.3d 440, 444-45 (D.C. Cir. 2007) (denying *in forma pauperis* application of a prisoner who did not have three strikes, but who had on at least five prior occasions brought appeals that were dismissed for failure to prosecute).  This Court's discretionary authority to deny *in forma pauperis* status to persons who have abused the privilege derives from § 1915(a) itself, *see* 28 U.S.C. § 1915(a) ("any court of the United States *may authorize* the commencement . . . of any suit . . . without prepayment of fees or security therefor") (emphasis added), and federal courts' "inherent power and constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."  *In re McDonald,* 489 U.S. at 185 n.8 (quoting *In re Martin-Trigona,* 737 F.2d 1254, 1261 (2d Cir. 1984)).  As the Supreme Court explained,

> [P]aupers filing *pro se* petitions are not subject to the financial considerations – filing fees and attorney's fees – that deter other litigants from filing frivolous petitions.  Every paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources.  A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice.  The continual processing of petitioner's frivolous requests . . . does not promote that end.

*In re McDonald,* 489 U.S. at 184.

This Court has examined Aruanno's extensive litigation history in this Court and his appeals to the Third Circuit. Since 1999, Aruanno was granted *in forma pauperis* status in 33 civil rights actions in this Court.[3] In addition, he has filed at least 45 appeals. *See Aruanno v. Johnson,* C.A. No. 13-3695, 2014 WL 2624793 at *1 (3d Cir. June 13, 2014) ("Aruanno is civilly confined at the Special Treatment Unit in New Jersey pursuant to the New Jersey Sexually violent Predators Act. He is also a frequent litigator, who is currently, by our count, pressing his 45th appeal in this Court.") This Court has dismissed many more than three of Aruanno's civil rights complaints on the ground that the complaint failed to state a claim upon which relief may be granted and the Third Circuit has affirmed the vast majority of these dismissals.[4] For example, Aruanno raised the identical unmeritorious claim in four civil rights complaints. In each case, he claimed that officials at the Special Treatment Unit denied him a job in retaliation for his exercising his right to remain silent; this Court dismissed each complaint and the Third Circuit affirmed each dismissal. *See Aruanno v. John/Jane Does 1-10,* 536 F.App'x 167 (3d Cir. 2013) (noting that "[t]his is Aruanno's fourth attempt to raise such [retaliation] claims before the Court"). In addition, Aruanno has brought meritless complaints, while proceeding *in forma pauperis*, against the Clerk of this Court (claiming that the Clerk refused to file two complaints, which Aruanno said he had mailed to the Clerk's Office for filing), against the United

---

[3] Aruanno also filed six petitions for a writ of habeas corpus; he paid the $5 filing fee in only one of these cases.

[4] *See, e.g., Aruanno v. Johnson,* C.A. No. 13-3695, 2014 WL 2624793 (3d Cir. June 13, 2014); *Aruanno v. John/Jane Does 1-10,* 536 F.App'x 167 (3d Cir. 2013); *Aruanno v. Green,* 527 F.App'x 145 (3d Cir. 2013); *Aruanno v. Commissioner of Social Security,* 517 F.App'x 72 (3d Cir. 2013); *Aruanno v. Johnson,* 501 F.App'x 151 (3d Cir. 2012); *Aruanno v. Velez,* 500 F.App'x 126 (3d Cir. 2012); *Aruanno v. Allen,* 498 F.App'x 160 (3d Cir. 2012); *Aruanno v. Cavanaugh,* 460 F.App'x 82 (3d Cir. 2012); *Aruanno v. Sweeney,* 449 F.App'x 118 (3d Cir. 2011); *Aruanno v. Smith,* 445 F.App'x 494 (3d Cir. 2011); *Aruanno v. Walsh,* 443 F.App'x 681 (3d Cir. 2011); *Aruanno v. Fishman,* 443 F.App'x 679 (3d Cir. 2011); *Aruanno v. Johnson,* 442 F.App'x 636 (3d Cir. 2011).

States Attorney for the District of New Jersey and the Attorney General of the United States (claiming that these officials violated his constitutional rights by failing to pursue criminal charges against officials at the Special Treatment Unit), and against United States District Judge Dennis M. Cavanaugh (retired) (claiming that Judge Cavanaugh's rulings in civil rights actions violated his constitutional rights).   This Court dismissed each of these complaints and the Third Circuit affirmed the dismissals. *See Aruanno v. Cavanaugh,* 460 F.App'x 82 (3d Cir. 2012); *Aruanno v. Walsh,* 443 F.App'x 681 (3d Cir. 2011); *Aruanno v. Fishman,* 443 F.App'x 679 (3d Cir. 2011).   Moreover, in one action in which Aruanno was proceeding *in forma pauperis*, he inaccurately claimed that the failure of officials at the Special Treatment Unit to transport him to a state court hearing on his post-conviction relief petition caused the dismissal of the case, when the electronically available record of that proceeding established that it was dismissed on the merits.   *See Aruanno v. Johnson,* C.A. No. 13-3695, 2014 WL 2624793 at *1 (3d Cir. June 13, 2014) ("Aruanno claimed that the defendants had failed to transport him to a hearing in state court.  However, as the District Court pointed out, the state court denied Aruanno's claims on the merits, for reasons that had nothing to do with Aruanno's nonattendance.") (citing *State v. Aruanno,* Cr. A. No. 97-01-0016, 2012 WL 1948670 (N.J. Super. Ct. App. Div. May 31, 2012)).   Suffice it to say that Aruanno's stream of meritless *in forma pauperis* filings has caused this Court to unnecessarily expend substantial resources.

      The Supreme Court has instructed that, in developing judge-made principles, "courts can and indeed should, be guided by the federal policies reflected in congressional enactments."  *Heck v. Humphrey,* 512 U.S. 477, 488 n.9 (1994).  Accordingly, the adoption of a judicial limitation in Aruanno's cases mirroring the PLRA's "three strikes" provision and including its "imminent danger" exception, appears to be necessary to create a uniform policy denying the privilege of proceeding *in forma pauperis* to abusive litigants and to allocate this Court's resources in a way that promotes the

interest of justice. *See Mitchell v. Federal Bureau of Prisons,* 587 F.3d 415 (D.C. Cir. 2010) (crafting a discretionary rule mirroring § 1915(g)'s imminent danger exception to deny *in forma pauperis* application brought by a prisoner who had only two "strikes" but had 63 cases that were dismissed for reasons other than failure to state a claim); *Douris v. Middletown Township,* 293 F.App'x 130 (3d Cir. 2008) (affirming discretionary denial of non-prisoner's *in forma pauperis* application based on Douris's eight prior unsuccessful civil actions); *cf. Kansas v. Colorado,* 556 U.S. 98, 108 (2009) (crafting a discretionary rule regarding expert fees by mirroring a statutory rule applicable in similar cases because "we see no good reason why the rule regarding the recovery of expert witness fees should differ markedly depending on whether a case is originally brought in a district court or in this Court [and] the best approach is to have a uniform rule that applies in all federal cases."). This Court will direct Aruanno to show cause why this Court should not deny his requests to proceed *in forma pauperis* in these three cases because he has abused the privilege of proceeding *in forma pauperis*.[5]

### III.  CONCLUSION

For the reasons set forth in this Opinion, this Court directs Aruanno to show cause why his applications to proceed *in forma pauperis* should not be denied, without prejudice to his prepayment of the $400 filing fee in each case.

s/William J. Martini

**WILLIAM J. MARTINI, U.S.D.J.**

DATED: September 4, 2014

---

[5] Aruanno is advised that, in the event that this Court ultimately denies his applications to proceed *in forma pauperis,* he would still be able to file these cases by prepaying, in each case, the $400 filing and administrative fees to the Clerk of the Court.